In re FORTY–EIGHT INSULATIONS, INC., Debtor.

FORTY-EIGHT INSULATIONS, INC., Plaintiff,

v.

Donald LIPKE, Raymond Martin, John Barry and Burke & Burke, Ltd., Defendants.

Bankruptcy No. 85 B 506.
Adv. 85 A 672.

United States Bankruptcy Court, N.D. Illinois, E.D.

Nov. 20, 1985.

Allan G. Sweig, Nachman, Munitz & Sweig, Chicago, Ill., for Plaintiff.

John M. Burke, Burke & Burke, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROBERT L. EISEN, Chief Judge.

This matter was heard on the defendants' motion to dismiss the adversary complaint for failure to state a cause of action. The motion is brought in accordance with Fed.R.Civ.P. 12(b)(6) made applicable to this adversary proceeding by Bankruptcy Rule 7012(b). Since this Court has considered matters outside pleadings, the Court treats this motion as one for summary judgment in accordance with Fed.R. Civ.P. 12(b). For the reasons set forth herein, this Court, having considered all the pleadings, memoranda and exhibits filed herein, does hereby grant in part and deny in part the relief requested by the plaintiff.

### FACTS

The debtor, Forty-Eight Insulations, Inc. (hereinafter "debtor" or "Forty-Eight"), filed a voluntary Chapter 11 petition on April 19, 1985. Since that time, the debtor has been operating as a debtor in possession.

Between 1923 and 1970, Forty-Eight manufactured products containing asbestos which were used by insulators working in the Chicago area and elsewhere. With the onslaught of the asbestos-related litigation, Forty-Eight found itself a defendant in numerous lawsuits wherein the plaintiffs sought damages for asbestos-related injuries. Since 1974, approximately 26,000 asbestos-related claims have been filed against Forty-Eight.

In May, 1982, Forty-Eight leased virtually all of its manufacturing plants, fixtures, machinery and equipment to Fibrex, Inc. Under the lease, Fibrex pays a monthly rent to Forty-Eight in the amount of $15,400. The lease runs through May, 1987 and Fibrex has options to extend the lease for five years and to purchase the assets for approximately $1,500,000.00. Both options expire May 31, 1986. The lease income represents the vast majority of Forty-Eight's revenues.

Defendant Lipke obtained a $804,000 judgment against Forty-Eight in the Circuit Court of Cook County on March 28, 1985 on an asbestos-related claim. On May 7, 1985, Lipke, through his attorneys, defendant Burke & Burke, Ltd. (hereinafter "Burke"), filed a state court action against Forty-Eight's insurance carriers to recover his judgment. Lipke has also sought satisfaction of his judgment from Fibrex, Inc. as successor to Forty-Eight.

Defendants Martin and Barry have filed suit in state court for asbestos-related claims against Fibrex as successor to Forty-Eight and others. Burke is also the attorney for these defendants.

On June 14, 1985, Forty-Eight filed this two-count adversary complaint seeking sanctions and injunctions.

In Count I, Forty-Eight seeks sanctions against Lipke and Burke for willful violation of the automatic stay by pursuing their state court cause of action against Forty-Eight's insurance carriers. Forty-Eight alleges that the insurance policies and proceeds are property of Forty-Eight's estate.

Count II of the complaint seeks to enjoin the defendants from pursuing any action against Forty-Eight's insurers or Fibrex, Inc. based on claims arising from the manufacture and sale of asbestos insulation by Forty-Eight.

### DISCUSSION

#### I.

Count I of Forty-Eight's complaint seeks sanctions against defendants Lipke and Burke for violation of the automatic stay provisions of 11 U.S.C. § 362 when Lipke and his attorneys, Burke, filed the lawsuit on May 7, 1985 against Forty-Eight's insurers. Forty-Eight contends that: 1) the insurance policies are property of the estate under 11 U.S.C. § 541(a); 2) Lipke and Burke had notice of Forty-Eight's Chapter 11 proceeding; 3) that the filing of the

lawsuit by Lipke and Burke against Forty-Eight's insurers was a willful violation of the automatic stay; and 4) that they are entitled to recover damages and costs for the violation of the automatic stay under 11 U.S.C. § 362(h).

The threshold question for this Court is whether the insurance policies are property of the estate. If they are, the question then becomes whether Lipke and Burke's filing of the lawsuit rises to the level of "willful" conduct required by the Bankruptcy Code before sanctions can be imposed.

### A.

Section 541(a)(1) defines property of the estate, with some exceptions not relevant here, as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In drafting this section, Congress intended "a broad range of property to be included in the estate." *United States v. Whiting Pools*, 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983).

Whether insurance policies fall within this broad range of property has recently been extensively reviewed by several courts in the Johns-Manville bankruptcy proceeding. *In re Davis*, 730 F.2d 176 (5th Cir.1984); *Wedgworth v. Fibreboard Corp.*, 706 F.2d 541 (5th Cir.1983); *In re Johns-Manville*, 40 B.R. 219 (S.D.N.Y. 1984); *In re Johns-Manville*, 26 B.R. 420 (Bankr.S.D.N.Y.1983). A review of those portions of the Johns-Manville proceedings that pertain to the issue in the case at bar is relevant here.

Johns-Manville Corp. ("Manville") is a large diversified manufacturer of construction related products. At one point in time, Manville was the world's largest miner, processor, manufacturer and supplier of asbestos and asbestos-related products. As a result of the financial burden of over 26,-000 asbestos-related personal injury and property damage suits brought against Manville, Manville and 20 of its subsidiaries and affiliates filed Chapter 11 reorganization petitions in the Bankruptcy Court in

the Southern District of New York in August 1982. Although Manville's potential liability appears to be in excess of Forty-Eight's, both debtors' bankruptcy petitions were filed as a result of the costs and potential liability of asbestos-related claims.

Early on in Manville's bankruptcy, Bankruptcy Judge Burton R. Lifland of the Bankruptcy Court for the Southern District of New York was confronted with the issue of whether the automatic stay under § 362 prohibited direct actions against Manville's insurers. *In re Johns-Manville Corp.*, 26 B.R. 420 (Bankr.S.D.N.Y.1983). Upon rehearing, the Court held:

> Manville's rights under its insurance policies and all the causes of action arising thereunder constitute property of the Manville estates within the purview of Section 541(a) of the Code. The scope of section 541(a) is broad and encompassing.

*Id.* at 436 (citations omitted). The court went on to hold that since the insurance policies are property of the estate, the automatic stay under § 362(a) operated to enjoin any actions against Manville's insurers.

In *In re Johns-Manville Corp.*, 40 B.R. 219 (S.D.N.Y.1984), the District Court for the Southern District of New York, affirmed the Bankruptcy Court's findings that the insurance policies constituted property of the estate. The District Court specifically found that Manville's insurance was property of the estate and "that actions by third parties against the bankrupt's insurers are automatically stayed upon the filing of the petition,..." *Id.* at 231. Agreeing with the Bankruptcy Court, the District Court cited the Supreme Court in *Whiting Pools, supra,* stating:

> That insurance falls within the scope of the Debtor's "property" is suggested by the expansive fashion in which property has been defined generally under the Code:
>
> > "The scope of this paragraph [§ 541(a)(1)] is broad. It includes all kinds of property, causes of action ... and all other forms of property speci-

fied in subsection 70a of the Bankruptcy Act." *United States v. Whiting Pools*, 462 U.S. 198 [205 n.9], 103 S.Ct. 2309, 2313, n.9, 76 L.Ed.2d 515 (1983) quoting H.R.Rep. No. 95–595, p. 367 (1977); S.Rep. No. 95–989, p. 82 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5568, 6323.

*Id.* at 230.

While these proceedings were taking place in New York, various parties to the asbestos litigation were also busy in the federal courts in Louisiana where several of the asbestos-related claims against Manville were pending. There, the Fifth Circuit reviewed a district court order denying asbestos claimants leave to assert direct causes of action against Manville's insurers.

In its initial review of the issue in *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541 (5th Cir.1983), the Court initially held that the stay did not bar direct suits against Manville's insurers. *Id.* at 547. However, upon rehearing, the Court, without explanation, reversed its position on that portion of the order and held that the district court could deny the plaintiff's motion to add Manville's insurers to its asbestos claims. *Id.* at 548.

The Fifth Circuit addressed the issue again in *In re Davis*, 730 F.2d 176 (5th Cir.1984) where the Court was asked to reverse the Louisiana District Court's order staying action against Manville's insurers. In denying the asbestos claimants' relief, the Court stated: "Although the asbestos workers find some support in Collier on Bankruptcy [1] for their challenge to this finding [that insurance policies and their proceeds are property of the estate], the weight of authority supports the New York district court's conclusion." *Id.* at 184.

The defendants in the case at bar unsuccessfully attempt to distinguish the above case. (Defendant's Opening Memorandum at 6–8.) The teachings of these cases is clear; i.e., that insurance policies are property of the estate. The fact that the question has not been addressed in this Circuit, does not change the holdings arrived at in other circuits.

■ This Court is in agreement with the "Manville Courts" that the insurance policies and proceeds are property of the estate. In Forty-Eight's case, the insurance is probably the largest and most valuable asset in the estate. If this Court were to allow the defendants to proceed against Forty-Eight's insurers, it would literally be firing the starting gun for the race to the courthouse. Eventually, and more probably sooner than later, the judgments would exceed the policy limits and a few claimants would have very substantial payments while the majority of claimants would end up with nothing.[2] It would be highly inequitable for this Court to put its stamp of approval on such a result. The primary purpose of the automatic stay is to preserve the debtor's estate so that there may be a systematic, equitable liquidation procedure for all claimants. H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* U.S. Code Cong. & Ad. News 5787, 6296–97 (1978).

Defendants cite *Foust v. Munson Steamship Lines*, 299 U.S. 77, 57 S.Ct. 90, 81 L.Ed. 49 (1936) and *Matter of Holtkamp*, 669 F.2d 505 (7th Cir.1982) to support their position that they may proceed against Forty-Eight's insurers. Neither of these cases, however, support their contention. Both cases involved individual personal injury claimants where there was adequate insurance so that allowing the cases

---

1. The defendants cite ¶ 541.01 of *Collier on Bankruptcy*, 4 L.King, *Collier on Bankruptcy*, ¶ 541.01 at 541–7, in support of their position that the insurance policies are property of the estate. This Court, as did the court in *Davis (supra)* rejects the proposition that the insurance policies and proceeds are somehow held in a constructive trust for the claimants and are therefore not property of the estate.

2. Mr. Lipke's judgment on his asbestos-related claim is $804,000. Assuming the other 26,000 claimants obtain an average judgment of $500,-000, the total judgments against Forty-Eight would total $13 billion ($13,000,000,000) which is, to say the least, far in excess of the debtor's worth or the debtor's insurance coverage.

to proceed would not prejudice or diminish the debtor's estate. *Foust* 299 U.S. at 86, 57 S.Ct. at 95; *Holtkamp* at 508. This case is just the opposite. The defendants seek to attach the largest asset of the debtor and to diminish the value of the estate greatly to the detriment of the remaining claimants.

The defendants also contend that Section 378 of the Illinois Insurance Code which allows for direct action against insurers should somehow supercede the Bankruptcy Code. Having found that the insurance policies are property of the debtor's estate, the Court summarily rejects this contention. *See, Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

### B.

 The debtor seeks sanctions under § 362(h) for Burke's and Lipke's violation of the automatic stay. Section 362(h) reads:

> (h) An individual injured by any *willful violation* of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h) (Supp.1984) (emphasis added). Subsection (h) was added by the 1984 amendments to the Bankruptcy Code and there is very little case law on this subsection. The section clarifies the Court's ability to impose sanctions for violation of the stay which previously were imposed via contempt hearings. This Court reads subsection (h) as requiring conduct which flaunts the jurisdiction and integrity of the Court, reading "willful violation" to mean a deliberate and intentional act done with the knowledge that the act is in violation of the stay.

 This Court does not perceive the defendants' acts in pursuing litigation against the debtor's insurers to be a "willful violation." The Court agrees with the debtor that the defendants should have requested this Court to lift the automatic stay before pursuing the debtor's insurers in state court. However, the Court also feels the defendants had a colorable argument that the automatic stay did not enjoin them from so proceeding. Therefore, the Court will not impose sanctions under § 362(h) against the debtors since the Court finds that their violation of the automatic stay was not willful.

### II.

Count II of the complaint requests the Court to invoke its equitable powers under 11 U.S.C. § 105(a) to enjoin all the defendants from filing any actions or proceeding with any pending actions against Fibrex, Inc. Forty-Eight alleges that if the defendants are allowed to pursue their actions against Fibrex, Forty-Eight and all of the creditors of Forty-Eight's estate will be irreparably harmed.

 The Court agrees with the debtor that Bankruptcy Courts can and do issue injunctions prohibiting suits against non-debtors in appropriate circumstances. However, this case does not present one of those circumstances. The circumstances calling for such injunctions generally involve the debtor's principal officers, shareholders and directors. *See In re The Original Wild West Foods, Inc.,* 45 B.R. 202 (N.D.Tex.1984); *In re Otero Mills, Inc.,* 25 B.R. 1018 (D.N.M.1982); *In re Matter of A & B Heating and Air Conditioning, Inc.,* 48 B.R. 397 (Bankr.M.D.Fla.1984). In these and other cases, the courts have issued the injunctions because the officers, directors or shareholders were an integral part of any hope for reorganization. Allowing suits to proceed against them would sound the death knell for any chance of a successful reorganization.

The case before the Court is quite different. Fibrex, Inc. is an independent Delaware corporation which leases certain of the debtor's assets and has substantial assets not related to its lease with the debtor. Allowing suits to proceed against Fibrex will not jeopardize Forty-Eight's plan for reorganization which the debtor has represented will primarily be an orderly liquidation of its assets (insurance policies and

fixed assets) and some sort of equitable distribution to the asbestos claimants of the proceeds of the liquidation.

Forty-Eight contends that since it is required under the terms of the lease to indemnify Fibrex for any costs and judgments incurred by Fibrex as a result of the asbestos-related claims, the Court should enjoin any actions against Fibrex. Additionally, Forty-Eight argues that the suits against Fibrex jeopardizes the lease with Fibrex and the potential purchase of the debtor's assets by Fibrex at the termination of the lease.

First, the Court is not convinced that Fibrex is the only possible purchaser of the debtor's assets. Second, the state court proceedings are in the very early stages of litigation and the plaintiffs have, at the very least, the difficult task of establishing that Fibrex is the "successor" of Forty-Eight. Fibrex liability involves an unusual tort law question best left to the state courts to decide. The issue should also be resolved at an early stage in the litigation and the expense would be the same whether it was addressed by the bankruptcy court or the state court. If the state court were to find that Fibrex is the legal successor to Forty-Eight, the debtor may move the court to reconsider the imposition of an injunction barring actions against Fibrex.

Under the facts before the Court now, however, the Court will not issue an injunction prohibiting suits against a non-debtor. For such an order to issue, the nexus between the non-debtor and a successful reorganization must be significantly more proximate.

THEREFORE, IT IS HEREBY ORDERED that:

1) Defendants Lipke and Burke and any other similarly situated parties are stayed by the provisions of 11 U.S.C. § 362(a) from pursuing any actions against the insurers of the debtor, Forty-Eight Insulations, Inc.

2) The Debtor's request for sanctions against Lipke and Burke pursuant to 11 U.S.C. § 362(h) is denied.

3) The debtor's request for injunctive relief for Fibrex, Inc. is denied without prejudice.