411 S.E.2d 35

David C. ANDERSON, Jr., Individually and as Executor of the Estate of Charlotte Lee Anderson, Deceased, Plaintiff Below,

v.

Ricky A. ROBINSON and H & H Industrial, Inc., a Corporation

and

CNA, aka Continental National American Insurance Company, CNA, aka Continental Columbia Casualty Company, and Gibraltar Casualty Company, Defendants Below.

No. 19839.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 8, 1991.

Rehearing Denied Nov. 4, 1991.

Decided Nov. 4, 1991.

---

G. Charles Hughes, Moundsville, William E. Watson, Wellsburg, for plaintiff.

Russell M. Clawges, Jr., Morgantown, for defendants Ricky Robinson and H & H Industrial, Inc.

Paul T. Tucker, Jeffrey A. Holmstrand, Wheeling, for defendant Continental Nat. American Ins. Co.

J. Michael Weber, Sara R. Simon, Parkersburg, for defendant Continental Columbia Cas. Co.

Wray V. Voegelin, Timothy F. Cogan, Wheeling, for defendant Gibralter Cas. Co.

McHUGH, Justice:

This case is before the Court upon a certified question by the Circuit Court of Marshall County.

The plaintiff is David C. Anderson, Jr., individually and as executor of the estate of Charlotte Lee Anderson. The defendants in the underlying suit are Ricky A. Robinson, H & H Industrial, Inc., Continental National American and Continental Columbia Insurance Companies (CNA), and Gibraltar Casualty Company.[1]

## I

The question certified to us by the circuit court is as follows: Whether the "automatic stay" provisions, contained in 11 *U.S.C.* § 362 (1986), preclude a plaintiff who has obtained a judgment against a tortfeasor from proceeding in the circuit courts of this state against the tortfeasor's insurer to satisfy the judgment from available insurance coverage where the tortfeasor has filed a petition for bankruptcy in federal court but the automatic stay has been modified by the bankruptcy court in order to allow the plaintiff to proceed with a lawsuit against the tortfeasor to the extent of available insurance coverage?[2]

---

**1.** This Court filed an opinion in this case on July 2, 1991. A petition for rehearing was subsequently filed by Continental National American Insurance Company and Gibralter Casualty Company on August 2, 1991. Following a response by the plaintiff, and a reply of CNA and Gibraltar, this Court denied the petition for rehearing. However, based upon the above, the originally filed opinion was modified. Accordingly, the modified opinion is set forth herein.

**2.** The certified question has been rephrased by this Court. "[U]pon receiving certified questions we retain some flexibility in determining how and to what extent they will be answered." *City of Fairmont v. Retail, Wholesale & Depart-*

Our answer is "no." The automatic stay provisions do not preclude a plaintiff from so proceeding under these circumstances.

## II

On July 19, 1984, the plaintiff's wife, Charlotte Anderson, was killed in an automobile accident in Marshall County. The accident occurred when a truck owned by the defendant H & H, and operated by its employee, defendant Robinson, collided with the car driven by Mrs. Anderson. John Riggenbach, the son-in-law of Mrs. Anderson, was a passenger in the Anderson vehicle. Riggenbach suffered personal injuries.

On August 10, 1984, the CNA home office was provided with an estimate for the claim of Mrs. Anderson in the amount of $100,000.

On November 8, 1985, the plaintiff David Anderson instituted a wrongful death action against Robinson and H & H in the Circuit Court of Marshall County.[3] The defendant H & H did not file an answer within the required time pursuant to Rule 12 of the *West Virginia Rules of Civil Procedure*, and, consequently, on January 14, 1986, default judgment was entered

against the defendant H & H on the issue of liability.[4]

On October 2, 1986, the defendant H & H filed a petition in the United States Bankruptcy Court for the Northern District of Ohio. This petition sought relief pursuant to Chapter 11 bankruptcy provisions. *See* 11 *U.S.C.* § 1101 to § 1174, as amended. Consequently, under 11 *U.S.C.* § 362(a)(1) (1986), all judicial proceedings against H & H are stayed.[5]

A trial was held in the *Anderson* action on the issue of damages on February 27, 1987. A jury verdict was returned in favor of the plaintiff in the amount of $889,-568.75.

On March 2, 1987, the circuit court entered a judgment order reflecting this verdict. Counsel for the plaintiff advised the defendant H & H of the judgment order in November, 1987, and, shortly thereafter, counsel for H & H advised plaintiff's counsel of the bankruptcy proceedings and automatic stay pertaining thereto.[6]

Following a demand for payment upon CNA by the plaintiff and the filing of a writ of execution against H & H's assets to no avail, the circuit court granted the plaintiff's motion to amend the complaint by

---

*ment Store Union,* 166 W.Va. 1, 3–4, 283 S.E.2d 589, 590–91 (1980).

**3.** On the same day, November 8, 1985, Riggenbach instituted a personal injury action against Robinson and H & H in the Circuit Court of Marshall County, which action, where pertinent in this opinion, will be referred to as the *"Riggenbach"* action, while this case is referred to as the *"Anderson"* action.

**4.** There appears to be some dispute over whether or not entry of default judgment was proper in this case. The defendants CNA and Gibraltar allege that they did not receive suit papers in the *Anderson* action, and that they were unaware of this action until November, 1987, when they were notified of the default judgment. The plaintiff, on the other hand, points out that letters from Robinson's counsel to counsel for CNA and Gibraltar indicate that two complaints were involved (*Riggenbach* and *Anderson*). There is, however, in the record, correspondence between Gibraltar and its counsel indicating that Gibraltar had no knowledge of the *Anderson* suit.

In any event, whether default judgment was appropriate in this case is not before this Court. Rather, we limit our decision in this case to answering the question certified to us. We do note that during the oral argument in this case, counsel for the defendants agreed that *liability* exists due to the default judgment, but on the question of *damages*, the defendants CNA and Gibraltar maintain that such damages are void *ab initio*.

**5.** 11 *U.S.C.* § 362(a)(1) (1986) provides, in part:
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, ... operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

**6.** It is noted by the circuit court that neither the plaintiff nor counsel for the plaintiff was aware of the defendant H & H's bankruptcy petition.

joining the insurers of H & H, namely, CNA and Gibraltar.

On January 21, 1988, H & H instituted an adversary proceeding in the bankruptcy court in Ohio under its Chapter 11 claim, seeking: (1) injunctive relief to stay further actions in the *Anderson* and *Riggenbach* suits; and (2) to declare the March 2, 1987 order against H & H void.

On February 16, 1988, the plaintiff Anderson filed a motion in H & H's bankruptcy proceeding seeking relief from the automatic stay provisions. This relief was sought pursuant to the provisions of 11 *U.S.C.* § 362(d) (1986).[7]

The United States Bankruptcy Court for the Northern District of Ohio, on June 23, 1988, entered an order which included the following:

1. Acts taken in violation of the automatic stay provisions of 11 U.S.C. § 362 by David C. Anderson, Jr., individually and as Executor of the Estate of Charlotte Lee Anderson, deceased, are void ab initio;

2. The annulling provisions of 11 U.S.C. § 362(d) cannot be used by the court to cure or ratify a void act; and

3. The automatic stay is *modified* to permit David C. Anderson, Jr. to proceed with the adjudication of his lawsuit against PVS, Inc., dba H & H Industrial Services with the limitation that any resulting judgment may only be satisfied by the proceeds of available insurance coverage.

(emphasis supplied)[8]

After denial of cross-motions for summary judgment, the circuit court certified the question in this case to this Court. The circuit court answered the question in the affirmative.

### III

It is well established that "[i]f an insured with coverage under a liability insurance policy does not pay the underlying judgment entered in a personal injury action, the injured plaintiff may institute a direct action against the insurance company to recover the amount of the judgment up to the limits of the policy." Syl. pt. 1, *Broy v. Inland Mutual Insurance Co.*, 160 W.Va. 138, 233 S.E.2d 131 (1977).

In this case, we are confronted with the situation of where a plaintiff, who has obtained a judgment establishing liability against a defendant, seeks to collect from the defendant's insurer subsequent to the defendant seeking the protection provided by federal bankruptcy laws.

In examining this claim, we look to the spirit of the bankruptcy laws under which the defendant has sought protection.

In *Credit Alliance Corp. v. Williams*, 851 F.2d 119 (4th Cir.1988), the United States Court of Appeals for the Fourth Circuit held that the § 362 automatic stay provisions do not protect a *guarantor* from a creditor's action to enforce a default judgment. There, a coal company entered into a three-year conditional sales contract with an equipment company. The equipment company assigned the note to the plaintiff and the defendant executed a guaranty of the coal company's obligation in favor of the plaintiff. The coal company subsequently defaulted on its obligation, and, accordingly, the plaintiff sued the coal company and the defendant/guarantor. The defendants failed to respond to the

---

7. 11 *U.S.C.* § 362(d) (1986) provides:
   (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
   (2) with respect to a stay of an act against property under subsection (a) of this section, if—

   (A) the debtor does not have an equity in such property; and
   (B) such property is not necessary to an effective reorganization.

8. 11 *U.S.C.* § 362 was amended in 1990. The 1990 amendments, however, have no bearing on this case. The 1986 version was in effect at the time of the bankruptcy court's June 23, 1988 order.

complaint, but filed a petition for bankruptcy. Default judgment was subsequently entered against the defendants.

The plaintiff in *Credit Alliance* then instituted garnishment proceedings against the defendants, and the bankruptcy court held that the § 362 automatic stay provisions rendered void the default judgment against the debtor *and the non-debtor guarantor*. The district court reversed the bankruptcy court's decision with respect to the non-debtor guarantor and the Fourth Circuit affirmed the district court's decision.

In so holding, the court looked to the plain language of § 362, specifically, that that section provides for an automatic stay of judicial proceedings "against the *debtor* [.]" (emphasis supplied) The court pointed out that the legislative intent of the automatic stay provisions are "to provide protection for bankrupt debtors and to facilitate the orderly distribution of debtors' assets among their creditors." 851 F.2d at 121.

The court also relied upon the provisions of other sections under the bankruptcy laws to evince a Congressional intent to not extend the automatic stay provisions to a third-party guarantor. The court reasoned thusly:

> Nothing in § 362 suggests that Congress intended that provision to strip from the creditors of a bankrupt debtor the protection they sought and received when they required a third party to guaranty the debt. Congress knew how to extend the automatic stay to non-bankrupt parties when it intended to do so. Chapter 13, for example, contains a narrowly drawn provision to stay proceedings against a limited category of individual cosigners of consumer debts. *See* 11 U.S.C. § 1301(a). No such protection is

provided to the guarantors of Chapter 11 bankrupts by § 362(a).

*Id.*[9]

The automatic stay provisions have also been analyzed from an equitable viewpoint. In *In re Honosky*, 6 B.R. 667 (1980), the United States Bankruptcy Court for the Southern District of West Virginia discussed the "judicial recognition of the equity of permitting a civil suit to proceed against one covered by insurance where the bankruptcy estate is in no way harmed." 6 B.R. at 669. There, the plaintiff sought lifting the automatic stay provisions, to the extent of liability insurance coverage, so that she could bring a lawsuit for injuries she sustained when the defendant/debtor's coal truck struck her automobile.

The court, in *Honosky*, relied upon the Congressional record which indicates that the automatic stay provision is not all-encompassing:

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

S.Rep. No. 989, 95th Cong., 2d Sess. 50, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5836. *Accord, Honosky*, 6 B.R. at 669.

Accordingly, the *Honosky* court held that because the defendant/debtor did not show that continuation of the civil proceeding would prejudice the debtor's estate, then the plaintiff may continue her action in the West Virginia circuit court.

Furthermore, it is worth noting that in *Honosky*, the personal injury suit was instituted on January 21, 1980; the defen-

---

**9.** The defendant Gibraltar, in this case, attempts to distinguish the holding in *Credit Alliance* by pointing out that in that case, a joint judgment was obtained against co-defendants, including the guarantor. This distinction is inapposite with respect to the purpose of the § 362 automatic stay provisions and the court's reasoning concerning such purpose, specifically, that the automatic stay provisions are designed to pro-

tect the *bankrupt* debtor. *See also Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194, 1196 (6th Cir.1983) ("It is universally acknowledged that an automatic stay of proceeding accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the Chapter 11 debtor.")

dant/debtor filed his bankruptcy petition on July 10, 1980, thereby invoking the automatic stay. The court's decision in *Honosky* merely allowed the plaintiff to proceed with her lawsuit. In the case now before this Court, a judgment has *already* been obtained, hence, the question of liability is already settled.

In *Christian v. Sizemore,* 181 W.Va. 628, 383 S.E.2d 810 (1989), we held that "[a]n injured plaintiff may bring a declaratory judgment action against the defendant's insurance carrier to determine if there is policy coverage before obtaining a judgment against the defendant in the personal injury action where the defendant's insurer has denied coverage." *Id.,* syl. pt. 3.

Furthermore, the declaratory judgment action may be brought in the original personal injury suit, which, by the amended complaint, has been done in this case. As we held in syllabus point 4 of *Christian:* "A declaratory judgment claim with regard to the defendant's insurance coverage may be brought in the original personal injury suit rather than by way of a separate action."

Clearly, the question of liability in this case is settled. There is some question, however, with respect to the amount covered by the tortfeasor's insurance coverage as well as the amount of damages involved. This, of course, must be determined by the lower court proceedings. As previously noted, our holding in this case is limited to answering the certified question before us, which will ultimately determine whether the plaintiff is prohibited from proceeding against the tortfeasor's insurers.

The plaintiff in this case has already obtained a judgment against the defendant H & H. By virtue of the petition for bankruptcy, it is apparent that H & H has no intention nor means of paying the judgment. The holdings of this Court in *Broy* and *Christian* expound that, under certain circumstances, an injured plaintiff may proceed against the tortfeasor's insurer. Our research reveals that neither the insurance statutes of this state nor the decisions of this Court proscribe a direct action against a tortfeasor's insurer under the circumstances of *this* case.

As noted previously, the holdings of federal courts clearly indicate that the automatic stay provisions, contained in 11 *U.S.C.* § 362 (1986), merely protect the *bankrupt* debtor from the reach of creditors. The June 23, 1988 order of the bankruptcy court indicated as much by holding that "[t]he automatic stay is *modified* to permit David C. Anderson, Jr. to proceed with the adjudication of his lawsuit against" H & H. (emphasis supplied) [10]

The defendants, Continental National American Insurance Company and Gibraltar Casualty Company, contend that the plaintiffs in this case cannot proceed against them inasmuch as it has been recognized that liability insurance falls within the scope of the bankrupt debtor's property. *Tringali v. Hathaway Machinery Co.,* 796 F.2d 553, 560 (1st Cir.1986). However, the *Tringali* court, in recognizing this point, relied primarily upon cases involving *multiple* plaintiffs, some of whom may even be unknown, such as product liability cases, and asbestos-related tort cases. *Tringali* is very clear with respect to this rationale: "Any contrary holding could start a race to the courthouse whenever a policy is too small to satisfy *several poten-*

---

10. The circuit court, in its July 27, 1990 Memorandum Order, noted that the automatic stay was not "annulled," but, rather, was "modified." "To modify," the circuit court stated, "carries a connotation of retroactivity."

Subsequent to the oral argument of this case before this Court, we granted the plaintiff's motion to supplement the record with an order of the bankruptcy court entered on February 5, 1991. That order denied CNA's motion to order the plaintiff to show cause why the plaintiff should not be held in violation of the automatic stay. In denying CNA's motion, the bankruptcy court stated: "This court finds that [the bankruptcy court's] Order of June 23, 1988 is to be given full force and effect and that it is clear and concise that the automatic stay has been lifted as regards proceedings against debtor's insurer." (This order was entered by the bankruptcy court in Akron, Ohio because H & H's bankruptcy proceedings had been converted to Chapter 7 proceedings and the proprietor of H & H had also filed for Chapter 7 protection, thus, both proceedings were consolidated in the bankruptcy court sitting in Akron.)

*tial plaintiffs.*" 796 F.2d at 560 (emphasis supplied). *See generally In re Fay Stocking Co.,* 95 F.2d 961 (6th Cir.1938); *In re Forty–Eight Insulations, Inc.,* 54 B.R. 905, 909 (1985).

In the case now before the Court, there is but one accident, and one plaintiff. It is not likely that in the situation presented by this case, there will be multiple demands upon the insurance proceeds. *Credit Alliance Corp. v. Williams, supra,* distinguishes the case of *A.H. Robins v. Piccinin,* 788 F.2d 994, *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), pointing out that that case contained "unusual circumstances." 851 F.2d at 121. Even the circuit court in this case acknowledged the "unusual circumstances" of *A.H. Robins,* and stated that the instant case is not controlled by that case, but resembles the *Credit Alliance* case.

Moreover, as quoted in section II herein, the bankruptcy court *modified* the automatic stay in this case so that the plaintiff could proceed with his suit against H & H.[11]

Economic resources which make up insurance funds do not *necessarily* enjoy the protection of federal bankruptcy law. The facts of the case now before the Court do not lend themselves to establishing legal principles which would address the particular complexities of *every* similar case before us. However, in this case, as noted previously, there is no question with respect to the establishment of liability, because a judgment on that issue has already been obtained by the plaintiff.

**11.** *See also* note 10, *supra.*

Consistent with the foregoing, we hold that where a plaintiff has obtained a judgment against a tortfeasor who has filed a petition for bankruptcy in federal court, the "automatic stay" provisions contained in 11 *U.S.C.* § 362, as amended, which are part of the federal bankruptcy laws, do not preclude the plaintiff from proceeding in the circuit courts of this state against the tortfeasor's insurer to satisfy the judgment where the bankruptcy court has modified the automatic stay in order for the plaintiff's lawsuit to proceed to the extent of available insurance coverage.

Our answer in this case also concerns the judgment obtained by the plaintiff. This case must be tried again in the circuit court on the issue of the amount of damages. Although the issue of *liability* has been settled by the default judgment obtained, the issue of the *amount* of damages must be retried because *that* issue arose during the period of the automatic stay. Consequently, the defendant *insurers* never had the opportunity to defend the claim with respect to the amount of damages involved.

Having answered the certified question, this case is dismissed from the docket of this Court.

Certified question answered; case dismissed from docket.