ROBERTS, Justice,
for the Court:
Alfred E. Harmon, Jr., an adult nonresident, alleged that Alfred E. Harmon, Sr., his father, sexually abused him between the years of 1977 and 1983. Harmon, Jr. filed a complaint for damages and named his father and his father’s insurance carriers, Northern Insurance Company of New York and St. Paul Fire & Marine Insurance Company, as defendants. The parties involved in this case are residents of the State of Louisiana; the alleged tort occurred in Louisiana; and the insurance contracts were issued in Louisiana. However, the two insurance carriers conduct business in Mississippi. Apparently the action was time-barred in Louisiana and Harmon, Jr. sued in the State of Mississippi where the six-year statute of limitations did not bar this action.
The insurers filed a Motion to Dismiss due to the untimeliness of its appeal. The Hinds County Circuit Court granted the defendant-insurers’ Motion to Dismiss on the basis that Mississippi does not recognize a plaintiff’s right to directly sue an insurance carrier, otherwise known as a Direct Action Statute. Harmon, Jr. has appealed contending that Mississippi is bound to follow the Louisiana Direct Action Statute. The insurers filed a Motion to Docket and Dismiss with this Court. This Motion was passed along for consideration with the case on the merits. As we grant the Motion to Docket and Dismiss, we do not consider any issue on its merits.

STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

Alfred E. Harmon, Jr. (Harmon, Jr.) alleges he was sexually abused by his father, Alfred E. Harmon, Sr. (Harmon, Sr.), between December 15, 1977, and August 22, 1983, in Louisiana. On February 17, 1989, Harmon, Jr. filed a complaint against Harmon, Sr. and two of his liability insurers, Northern Insurance Company of New York (Northern) and St. Paul Fire and Marine Insurance Company (St. Paul) in the Circuit Court of Hinds County, Mississippi, seeking a joint and several judgment of twelve million dollars ($12,000,000). Harmon, Sr. has never been served process in this case. Northern and St. Paul filed a Motion to Dismiss prior to answering the complaint. The motion was heard in the Hinds County Circuit Court on March 31, 1989. On June 23, 1989, the insurers’ Motion to Dismiss was granted.
Harmon, Jr. filed his Notice of Appeal to this Court on September 19, 1990, approximately one year and three months from the date of the order granting Northern and St. Paul’s Motion to Dismiss. Upon receiving notification of the appeal to this Court, the insurers filed a Motion to Docket and Dismiss with this Court. Both Northern’ and St. Paul claim, pursuant to Miss. S.Ct.R. 4(a), that not only is Harmon, Jr.’s appeal time-barred, but that Miss.S.CtR. 2 mandates dismissal of the case. Furthermore, the insurers claim that the appeal is frivolous since .Mississippi law forbids direct action suits against insurance companies, thereby making sanctions against counsel for Harmon, Jr. appropriate.
In response to the insurers’ action, Harmon, Jr. filed a brief in opposition to the Motion to Docket and Dismiss. In that brief, Harmon, Jr. alleges that by a letter dated July 21, 1989, one of Harmon, Jr.’s attorneys advised the lower court that notice had been received of the initiation by Harmon, Sr. of bankruptcy proceedings on June 9, 1989. Harmon, Jr. alleges that under federal bankruptcy law, these proceedings stayed his appeal against his father’s insurance carriers, and furthermore, would not penalize him under any prescribed time limit during the stay. Harmon, Jr.’s notice of appeal was filed September 21, 1990, within 30 days of Harmon, *940 Jr. receiving notice on August 24, 1990 that his father had been discharged in bankruptcy, thereby allowing the appeal to go forward.
The Motion to Docket and Dismiss was passed for consideration along with the merits of the appeal.

DISCUSSION

Harmon, Jr. sets forth only one issue to be considered by this Court; but we must first consider the Motion to Docket and Dismiss. As we grant Northern and St. Paul’s Motion to Docket and Dismiss, we need not address the choice of law question raised by Harmon, Jr.
The issue before this Court involves only questions of law. “[W]hen passing upon points of law decided in a trial court, our review is de novo.” Derouen v. Murray, 604 So.2d 1086, 1092 (Miss.1992). See, e.g., Rawls v. Parker, 602 So.2d 1164, 1167 (Miss.1992); Stevenson v. Stevenson, 579 So.2d 550, 553 (Miss.1991); Planters Bank & Trust Co. v. Sklar, 555 So.2d 1024, 1028 (Miss.1990); Cole v. Nat’l Life Ins. Co., 549 So.2d 1301, 1303 (Miss.1989).
I.
THIS ACTION SHOULD BE DISMISSED UNDER MISSISSIPPI SUPREME COURT RULE 4(a) FOR HARMON, JR.’S FAILURE TO GIVE TIMELY NOTICE OF APPEAL TO THIS COURT
A.
THE AUTOMATIC STAY PROVISIONS OF THE BANKRUPTCY CODE, 11 U.S.C. § 362(a), DO NOT APPLY TO CO-DEFENDANTS
Harmon, Jr. filed an appeal with this Court from the dismissal of his case by the Hinds County Circuit Court one year and three months after the deadline for a timely appeal imposed by Mississippi Supreme Court Rule 4(a).[1] Harmon, Jr, alleges that any further actions against his father and his father’s insurance carriers were stayed as a result of the notification he received that his father had filed bankruptcy.
Harmon, Jr. bases his argument that he could not proceed in this action on 11 U.S.C. § 362(a), which provides in pertinent part:
(а) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the’ case under this title;
(3) any act to obtain possession of property of the estate or of property from the estate;
[[Image here]]
(б) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; ....
11 U.S.C. § 362(a). Harmon, Jr. contends that § 362(a) precluded him from proceeding in any further action against his father and his father’s liability insurance carriers. In addition, Harmon, Jr. contends that § 362(a) also prohibited him from prosecuting his appeal against his father’s liability insurers until he had received notice of the termination or expiration of the automatic stay. See also 11 U.S.C. § 108(c). The insurers contend that it is well-established *941 that the automatic stay provisions of the bankruptcy code do not apply to co-defendants or co-tortfeasors.
The automatic stay provisions serve the purposes of giving the debtor some breathing room from creditors, and protecting creditors from those creditors who would act in such a way as to obtain payment from the debtor to the detriment of other creditors. Croyden Assoc. v. Alleco, Inc., 969 F.2d 675, 677 (8th Cir.1992); Maritime Electric Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1204 (3rd Cir.1991) (citing Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448 (3rd Cir.1982)).
In Wedgeworth v. Fibreboard Corp., 706 F.2d 541 (5th Cir.1983), the Fifth Circuit resolved the question of whether or not section 362(a) mandated a stay of the proceedings against co-defendants, as well as the debtor. The court said:
[although judicial interpretation [regarding section 362(a) ] is checkered as to the extent of this statutorily required stay, resolution of the question presented requires a walk down a path as yet un-blazed by this court. At trail’s end we conclude that § 362 does not operate as an automatic stay of claims against the co-defendants_
Wedgeworth, 706 F.2d at 544. See also In re White Motor Credit Corp., 37 B.R. 631, 644-645 (D.C.1984); Sassau v. Louisiana Workover Service, Inc., 607 So.2d 809, 812 (La.Ct.App.1992) (“We find further support for our position in the federal jurisprudence which holds that a stay in bankruptcy as to one defendant has no effect on claims pending against a co-defendant in the same suit.”).
The Fifth Circuit reached its conclusion that the automatic stay provision did not apply to co-defendants by examining the language of the statute itself, which focuses on the insolvent party, and not on third parties or co-defendants to a particular action. Wedgeworth, 706 F.2d at 544. The Third Circuit has also addressed this issue: “[t]he automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor.” Maritime Electric Co., 959 F.2d at 1205 (citing Lynch v. Johns-Manville Sales Corp., 710 F.2d 1194, 1196-1197 (6th Cir.1983)).
Although § 362(a) states that the automatic stay applies “to all entities,” courts have interpreted that to mean the debtor, the debtor’s property or the debtor’s estate. In re Anje Jewelry Co., Inc., 47 B.R. 485, 486 (E.D.N.Y.1983) (citing In re Casgul of Nevada, Inc., 22 B.R. 65, 66, 6 C.B.C.2d 1351, 1353, 9 B.C.D. 449, 450 (Bkrtcy.App., 9th Cir.1982)). See also In the Matter of Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation, 140 B.R. 969, 977 (N.D.Ill.1992) (“Section 362(a)(1) applies only to actions against the debtor.... Related litigation goes on without the debtor.”).
Based on the foregoing, we find that the automatic stay provisions of § 362(a) did not stay further action by Harmon, Jr. against his father’s insurance carriers. Therefore, it did not relieve Harmon, Jr. of the obligation to make a timely appeal under Miss.S.Ct. Rule 4(a) in the action against his father’s insurers, Northern and St. Paul.
B.
THE INSURANCE POLICIES AND THE PROCEEDS FROM THE POLICIES ARE NOT THE PROPERTY OF THE BANKRUPT’S ESTATE AND THEREFORE ÁRE NOT SUBJECT TO THE AUTOMATIC STAY PROVISIONS OF SECTION 362(a).
Harmon, Jr. claims that the insurance policies issued to Harmon, Sr. and the corresponding proceeds are the property of the bankruptcy estate and are therefore subject to the automatic stay provisions of 11 U.S.C. § 362(a) pursuant to 11 U.S.C. § 541. We disagree.
Section 541(a)(1) defines property of the estate as “all legal or equitable interests of the debtor in property as of the commencement of the estate.” Section 541(d) limits that definition somewhat by bringing into the estate property “which the debtor *942 holds, as of commencement of the case, only legal title and not equitable interest, ... only to the extent of the debtor’s legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.” In re Correct Mfg. Corp., 88 B.R. 158, 161 (S.D.Ohio 1988). Although the Bankruptcy Court in Correct concluded that the insurance contracts in a Chapter 7 reorganization belonged to the bankruptcy estate, the court determined that “[t]he estates’ interests do not encompass the right to receive the proceeds of the insurance policies.” Id. at 162. See also In re Louisiana World Exposition, Inc., 832 F.2d 1391, 1399 (5th Cir.1987) (quoting In re Gagnon, 26 B.R. 926, 928 (M.D.Pa.1983)) (“the estate’s legal and equitable interests in property rise no higher than those of the debtor”). Insurance proceeds are not intended for the insured’s use; they are intended for the benefit of the injured party under the provisions of the policies issued.
There are cases which have held that insurance policies and proceeds are the property of the bankruptcy estate. See, e.g., MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89, 92 (2d Cir.1988); In re Forty-Eight Insulations, Inc. 54 B.R. 905 (N.D.Ill.1985); In re Johns-Manville Corp., 26 B.R. 420 (S.D.N.Y.1983), aff'd, 40 B.R. 219 (S.D.N.Y.1984). However, there is a major distinguishing characteristic between most of those cases and the case sub judice. Most of those cases involved corporate bankruptcy proceedings and large class action litigation, and they were primarily concerned with the insurance policies and the proceeds from the standpoint of numerous plaintiffs, not a single plaintiff.
In re Fernstrom, 938 F.2d 731 (7th Cir.1991) distinguished itself from the large tort liability cases. In Fernstrom, the debtor claimed that certain proceeds from an insurance policy were the property of the bankruptcy estate, and that the claimed beneficiary under the policy should be enjoined from proceeding. The Bankruptcy Court declined to apply the reasoning of the mass tort litigation cases here, due to the lack of similar policy concerns. Id. at 736. The Seventh Circuit noted that although the plaintiff would exhaust all of Fernstrom’s liability coverage for the year if successful in its claim, the potential recovery did not extend beyond the policy limit. Therefore, the court found that this was not a similar situation to the large tort litigation cases because there were no other litigants “in line” for the proceeds, nor would the payment on the policies impair any reorganization plans of Fernstrom. Id. (citing A.H. Robins v. Piccinin, 788 F.2d 994, 999 (4th Cir.), cert. denied, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986)).
Applying the same rationale to the case sub judice, we reach the same conclusion as that reached in Fernstrom; that is, we find that the proceeds from an insurance policy are not the property of the bankruptcy estate. Harmon, Sr. was never entitled to the proceeds from the liability policies he purchased from Northern and St. Paul. Moreover, the amount sought by Harmon, Jr. was not more than the full amount of the two policies. There was no evidence that there were any other plaintiffs waiting in the wings to collect from these policies. Furthermore, it is unusual for the plaintiff in a case such as this to seek protection under the umbrella of the automatic stay provisions; it is usually the defendant who seeks relief from pending litigation. Moreover, as the insurers note, since there was never personal jurisdiction obtained over Harmon, Sr., it is disingenuous for Harmon, Jr. to claim that the automatic stay would also apply to his insurers.

CONCLUSION

As we find that the automatic stay provisions of 11 U.S.C. § 362(a) do not apply to co-defendants Northern and St. Paul, and that the insurance proceeds from the policies were not the property of the bankruptcy estate, we dismiss this appeal pursuant to Miss.S.Ct.R. 4(a) for Harmon, Jr.’s failure to file a timely appeal to this Court.
APPEAL DISMISSED.
*943 HAWKINS, C.J., DAN M. LEE, and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE and SMITH, JJ., concur.

. Miss.S.Ct.R. 4(a) states, in pertinent part:
(a) Appeals and Cross-Appeals in Civil and Criminal Cases. In a civil or criminal case in which an appeal or cross-appeal is permitted by law as of right from a trial court to this Court the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from....