**Jerri TABORSKI, Plaintiff,**

v.

**UNITED STATES of America INTERNAL REVENUE SERVICE, Defendant.**

**Nos. 91 C 6600, 88 B 1624 and 89 A 587.**

United States District Court, N.D. Illinois, E.D.

March 10, 1992.

**960**

Robert J. Adams and Brian C. Pedersen,
Robert J. Adams & Associates, Chicago,
Ill., for Adolph Taborski.

Jerri Taborski, pro se.

Douglas W. Snoeyenbos, U.S. Dept. of
Justice, Washington, D.C., for I.R.S.

## MEMORANDUM OPINION
## AND ORDER

MAROVICH, District Judge.

The bankruptcy court found the Internal
Revenue Service ("IRS") willfully violated
the automatic stay set forth in 11 U.S.C.
§ 362 ("§ 362") by seizing Jerri Taborski's
postpetition income tax refunds and apply-
ing those overpayments to her husband's
income tax liability.[1]  As a consequence of
these actions, the bankruptcy court award-
ed Jerri Taborski her costs and attorneys'
fees for actions she took to force the IRS
to refund her overpayments.  The United
States objects to the bankruptcy court's
decision.  Notwithstanding the United

---

**1.** Since the IRS is not subject to suit, *Krouse v.
United States Government Treasury Department,
IRS*, 380 F.Supp. 219, 220 (C.D.Cal.1974), we
dismiss it from this matter.  We affirm the
award of costs and attorneys' fees against the
United States.

States' objections, we affirm the bankruptcy court's decision.

## BACKGROUND

On October 8, 1984, the IRS jointly and severally assessed Adolph and Jerri Taborski $3,248 in tax, $1317.47 in interest and $793.40 in penalty with respect to their joint 1981 federal income taxes. On February 17, 1988, Jerri Taborski filed a petition under Chapter 13 of the Bankruptcy Code. The bankruptcy court confirmed her reorganization plan on May 16, 1988. On June 17, 1988, the IRS filed a proof of claim totaling $3,163.45 for 1981 income taxes owed by the Taborskis.

Subsequently, the IRS seized the Taborskis' joint 1987 and 1988 federal and 1988 state income tax refunds and applied those refunds against Adolph Taborski's 1981 federal tax liability. In response to this action, Jerri Taborski filed an adversary complaint against the IRS seeking a rule to show cause why the IRS should not be held in contempt for violating the automatic stay by seizing her share of the 1987 and 1988 federal and 1988 state income tax refunds.[2]

The IRS also filed a notice of federal income tax lien on August 25, 1989 against all of Adolph and Jerri Taborski's property. In response to the tax lien, the Taborskis filed a motion in the bankruptcy court on November 21, 1989 seeking damages under § 362(h) and a rule to show cause why the IRS should not be held in contempt under Bankruptcy Rule 9020. Taborski argued the IRS violated the automatic stay again by filing its notice of federal tax lien. On January 12, 1990, the bankruptcy court consolidated the adversary complaint with the motion.

On October 11, 1990, the IRS seized Jerri Taborski's 1989 income tax refund and applied it to her husband's 1981 tax liability. Jerri Taborski responded to this second seizure by filing a second motion to show cause why the United States should not be held in contempt for violating the automatic stay under § 362.

On November 1, 1990, the IRS refunded Jerri Taborski's overpayments for the 1987 and 1988 federal and 1988 state income taxes, which the IRS had withheld in violation of the automatic stay. However, the IRS did not compensate Taborski for her costs and attorneys' fees incurred in filing the adversary action and the first motion to show cause.

On September 16, 1991, the bankruptcy court held that the IRS willfully violated the automatic stay in two ways.[3] First, the court held that the IRS violated the automatic stay by seizing Jerri Taborski's share of the 1987 and 1988 federal and 1988 state income tax refunds and offsetting them against Adolph Taborski's tax liability. Second, the court concluded that the IRS violated the automatic stay by filing a notice of federal tax lien against Jerri Taborski's property. The bankruptcy court rejected the United States' sovereign immunity defense and awarded Jerri Taborski her attorneys' fees and costs in bringing the adversary action and the first motion to show cause. Furthermore, the bankruptcy court ordered an evidentiary hearing to determine whether the IRS violated the automatic stay by seizing Jerri Taborski's share of the 1989 income tax refund.

The United States objects to the bankruptcy court's decision pursuant to Bankruptcy Rule 9033. The United States first argues that it never waived its sovereign immunity and therefore that the bankruptcy court did not have jurisdiction to enter an award of costs and attorneys' fees against it. Second, the United States claims that even if it waived sovereign immunity, the IRS did not violate the automatic stay under § 362 with respect to the 1987 and 1988 refunds because it did not know Jerri Taborski claimed an individual share of the refund. Finally, the United States argues that the bankruptcy court

---

**2.** Jerri and Adolph Taborski joined as plaintiffs in the adversary proceeding. The bankruptcy court dismissed Adolph because only his wife filed the Chapter 13 bankruptcy petition. *Ta-borski v. United States,* No. 89 A 587, minute order (Bankr.N.D.Ill. August 21, 1989).

**3.** *Taborski v. IRS,* No. 89 A 587, slip op., 1991 WL 236872 (Bankr.N.D.Ill. September 16, 1991).

committed error by failing to apply the substantive provisions of 26 U.S.C. § 7430 to the issue of the award of costs and attorneys' fees.

## DISCUSSION

Pursuant to Bankruptcy Rule 9033, the district court reviews a bankruptcy judge's decision de novo. For the reasons set forth below, we find that the IRS willfully violated the automatic stay and therefore that the United States must reimburse Jerri Taborski for her costs and attorneys' fees. As an initial matter, we must first discuss how the United States has waived its sovereign immunity defense.

A. Waiver of Sovereign Immunity

■ In general, the United States cannot be sued without its consent, and the existence of consent is a prerequisite for jurisdiction. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). The bankruptcy court found that the United States waived sovereign immunity pursuant to 11 U.S.C. § 106, which provides as follows:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

. . . . .

(c) Except as provided in subsection[ ] (a) ... of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C. § 106(a) & (c). The United States challenges the bankruptcy court's finding and argues it did not waive sovereign im-

munity under either § 106 or under Bankruptcy Rule 9020.[4]

1. *Waiver Under § 106(c)*

The United States first argues that 11 U.S.C. § 106(c) does not waive the United States' sovereign immunity from suit for recovery of monetary damages, citing as authority *Hoffman v. Connecticut Department of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989). In *Hoffman*, four members of the Supreme Court held that § 106(c) does not operate as a waiver of a State's sovereign immunity. The United States seeks to expand the application of that rule and have us find that § 106(c) does not operate as a waiver of the United States' sovereign immunity from suits for money damages.

Upon our first review of this matter, our initial inclination was to limit *Hoffman* to situations involving monetary awards against states as did Judge Rovner in *In re Price*, 130 B.R. 259 (N.D.Ill.1991). In *Price*, Judge Rovner affirmed the bankruptcy court's decision to sanction the IRS for willfully violating the automatic stay. Judge Rovner rejected the United States' argument that *Hoffman* barred an award of costs and attorneys' fees. She distinguished *Hoffman* in three ways.

First, Judge Rovner noted that the Supreme Court was evenly divided about whether § 106(c) waives a state's sovereign immunity. Therefore, Judge Rovner found that even assuming *Hoffman* is controlling on the issue of the federal government's waiver of sovereign immunity under § 106(c), "there is no signal from the divided Court which suggests one result or another on this question." *Price*, 130 B.R. at 267.

Second, the issue before the *Hoffman* court concerned the relationship between Congress' ability to waive a state's sovereign immunity under § 106(c) and a state's constitutional protection under the Eleventh Amendment. This peculiar constitutional issue distinguishes *Hoffman* from a

---

**4.** The Government asserts that it has not waived sovereign immunity under Bankruptcy Rule 9020. Since we find that the Government has waived its sovereign immunity defense under § 106(a), we do not need to decide the issue pursuant to Bankruptcy Rule 9020.

suit involving the United States, because the United States does not enjoy similar constitutional protection.

Finally, Judge Rovner found that the legislative history of § 106 supports the conclusion that Congress intended to waive the federal government's immunity from suit, including suits for monetary relief. *Id.*[5]

We delayed issuing our decision because the Supreme Court granted certiorari to decide whether § 106(c) of the Bankruptcy Code waives the United States' sovereign immunity from an action seeking monetary recovery in bankruptcy. On February 25, 1992, the Supreme Court issued its opinion, holding that § 106(c) does not waive the United States' sovereign immunity. *United States v. Nordic Village*, — U.S. —, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). In that case, the debtor, Nordic Village ("Nordic"), filed a petition under Chapter 11. Four months later, a Nordic Village officer withdrew $20,000 from the company's corporate account and sent that amount to the IRS with instructions that it be used against his individual tax liability. The trustee appointed for Nordic filed an adversary proceeding against the United States to recover the $20,000. The bankruptcy court permitted the recovery and entered a $20,000 judgment against the IRS, which the district court affirmed.[6] For the first time on appeal, the United States raised a defense of sovereign immunity. The Sixth Circuit rejected that defense and upheld the district court's decision. The Supreme Court agreed to hear the case because of a conflict in the circuits.

The Court first rejected the notion that its prior opinion in *Hoffman* controlled the issue before it. *Nordic Village*, 112 S.Ct. at 1014. The Court reasoned that since the Court in *Hoffman* was evenly divided over how state and federal sovereigns should be treated for purposes of immunity, and "since the deciding vote of the concurrence, denying amenability to suit, rested upon a ground (the Eleventh Amendment) applicable only to the States and not to the Federal Government, ... the holding in *Hoffman* has no binding force here." *Nordic Village*, 112 S.Ct. 1011 at 1014. In reaching this result, however, the Court did rely on the reasoning of the plurality with respect to Congress' intent to waive sovereign immunity.

The Court found that waivers of sovereign immunity must be unequivocally expressed, must be construed strictly in favor of the sovereign, and must not be enlarged beyond what the language requires. *Id.* The Court held that subsections (a) and (b) of § 106 meet the unequivocal expression requirement; however, subsection (c) does not. *Nordic Village*, 112 S.Ct. 1011 at 1014–1015. The Court recognized that § 106(c) waives sovereign immunity; however, the Court found that the section fails to establish unambiguously that the waiver extends to monetary claims and found two interpretations of the statute that do not authorize monetary relief.[7] Therefore, it held that § 106(c) does not waive the United States' sovereign immunity from suits for money damages.

### 2. *Waiver Under § 106(a)*

■ The *Nordic Village* decision does not end our sovereign immunity inquiry because that opinion is limited to sovereign

---

5. For a discussion of that legislative history, the reader should refer to Justice Stevens' dissenting opinion in *Hoffman*. *Hoffman*, 492 U.S. at 111–14, 109 S.Ct. at 2827–29.

6. The bankruptcy court concluded that the postpetition transfer could be avoided under 11 U.S.C. § 549(a) and recovered from the IRS under 11 U.S.C. § 550(a).

7. The first interpretation permits a bankruptcy court to issue declaratory and injunctive (not monetary) relief by reading the two paragraphs of subsection (c) as complementary rather than independent. Under this view, the first paragraph identifies the subject matter of the dispute and the second paragraph describes the relief that courts may grant in such disputes.

The second interpretation focuses on the exception that introduces subsection (c). Under this view, relief under subsections (a) and (b) is exclusive and precludes any resort to waiver under (c). The Court claims that reading would bar the *Nordic Village* suit.

We agree with Justice Stevens' dissent in which he found that these alternative readings of subsection (c) were less satisfactory than a literal reading of the statute. *Nordic Village*, 112 S.Ct. at 1018–1019.

immunity under § 106(c). In our case, the bankruptcy court also found that the United States had waived sovereign immunity pursuant to § 106(a).[8] In *Nordic Village*, the Supreme Court found that § 106(a)'s language was unequivocal. *Nordic Village*, 112 S.Ct. 1011 at 1014–1015. Therefore the Court stated that the United States had waived sovereign immunity under § 106(a). Accordingly, we next need to decide whether the United States has met the § 106(a) requirements for waiver.

Subsection 106(a) authorizes monetary recovery from a governmental unit if the governmental unit has a claim against the estate, the debtor's claim against the governmental unit is property of the estate, and the two claims arose from the same "transaction or occurrence." *United States v. McPeck*, 910 F.2d 509, 512 (8th Cir.1990); *In re Lile*, 96 B.R. 81, 84 (Bankr. S.D.Tex.1989). All three requirements are met in this case.

First, the United States has filed a proof of claim in the bankruptcy. Second, Jerri Taborski's claim for her costs and attorneys' fees is considered property of the estate. *McPeck*, 910 F.2d at 513 (claim for attorneys' fees under § 362(h) is property of the estate); *Price*, 130 B.R. at 269–70 (attorneys' fees incurred as the result of the IRS's error and which the bankruptcy court might award to the Chapter 13 debtor's counsel would, if imposed upon the debtor instead of the IRS, diminish the income which the debtor could devote to the payment of his prior debts and thus are considered property of the estate).

Finally, both claims arise out of the same transaction or occurrence, because Jerri Taborski's claim for costs and attorneys' fees is proximately linked to actions the IRS took to recover back taxes. Other courts in identical situations have reached similar conclusions. *In re Bulson*, 117 B.R. 537, 540 (Bankr. 9th Cir.1990); *Price*, 130 B.R. at 270. We therefore find that the United States has waived its sovereign immunity.

### B. Technical Violation of the Automatic Stay

A petition filed under Chapter 13 operates as a stay of a laundry list of legal activity, including actions to recover any claim against the debtor which arose before commencement of the case and any action to obtain possession of estate property. 11 U.S.C. § 362(a)(1) & (3). Section 362(a) imposes the stay on all "entities," which are defined to include a "governmental unit." 11 U.S.C. § 101(14). Governmental unit in turn is defined to include a "department, agency or instrumentality of the United States." 11 U.S.C. § 101(26). Thus, the United States and the IRS are subject to the automatic stay. *See, e.g., United States v. McPeck*, 910 F.2d 509, 511 (8th Cir.1990). Jerri Taborski accuses the IRS of violating this automatic stay by seizing her share of the 1987 and 1988 refunds.

The United States asserts that even assuming it waived sovereign immunity, it did not violate the automatic stay, because at the time it seized the 1987 and 1988 refunds, it had no knowledge that Jerri Taborski claimed an individual share of the refund.[9]

---

**8.** Subsection 106(a) provides as follows:

A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is the property of the estate and that arose out of the same transaction or occurrence out of which such governmental claim arose.

11 U.S.C. § 106(a).

**9.** The United States also seeks to avoid a sanction under a second theory: that it attempted to satisfy Jerri's 1981 tax liability, a prepetition debt, with her postpetition refund. The United States asserts it never applied any portion of the seized refunds to Jerri Taborski's 1981 tax liability even though it attempted to seize subsequent funds to satisfy the Taborskis' entire 1981 tax liability. The United States' theory is that husbands and wives are jointly and severally liable for tax deficiencies that result from joint tax returns; I.R.C. § 6013(d)(3), *Pearson v. Commissioner*, 890 F.2d 353, 355 (11th Cir.1989), and therefore that Adolph Taborski is liable for all of the Taborskis' 1981 tax deficiency. The United States' argument implies that it can reach Jerri Taborski's proportionate share of the couple's 1981 tax liability through her husband even if her debts are discharged in bankruptcy.

We do not need to decide whether the IRS somehow violated the automatic stay under this theory because at least a portion of Jerri Taborski's tax refund is considered property of her estate. By seizing estate property, the IRS violated the automatic stay.

Notwithstanding this claim, the IRS's actions after it seized the refunds violated the automatic stay because those refunds are property of the bankruptcy estate.

### 1. *Seizing Estate Property*

■ "Where spouses claim a refund under a joint return, the refund is divided between the spouses, with each receiving a percentage of the refund equivalent to his or her proportion of the withheld tax payments." *Gordon v. United States*, 757 F.2d 1157, 1160 (11th Cir.1985). Absent a specific instruction to the contrary, the IRS assumes that a refund from a joint return will be applied to either spouse's prior tax liability.

■ Once a debtor files a bankruptcy petition, an estate is created as a matter of law; that estate includes all of the debtor's legal or equitable interests "in property as of the commencement of the case." 11 U.S.C. § 541(a). A debtor's income tax refund is considered property of the estate. *Kokoszka v. Belford*, 417 U.S. 642, 645–46, 94 S.Ct. 2431, 2433–34, 41 L.Ed.2d 374 (1974) (construing property of the estate under 11 U.S.C. § 110(a)(5), the predecessor section to § 541); *In re Mason*, 79 B.R. 786, 787 (Bankr.N.D.Ill.1987) (tax refunds that debtor is entitled to at the time of filing of the bankruptcy petition are property of the estate even if the exact amount of the refund is unascertainable as of the date the debtor is entitled to a refund).

■ Since Jerri Taborski filed her Chapter 13 petition on February 17, 1988, and since the IRS seized refunds from the Taborskis' joint 1987 and 1988 tax refunds, at least a portion of the amount the IRS seized represented refunds for Jerri's pre-petition overpayments. Therefore, the IRS seized estate property.[10] Even if we assume that the IRS did not initially have notice of Jerri Taborski's intention to claim her individual share of the refund, it had ample notice by June 27, 1989, when Jerri filed the adversary proceeding, that she wanted her individual share of the 1987 and 1988 refunds. As of that date, the United States violated the automatic stay by retaining possession of estate property. 11 U.S.C. § 362(a)(3). However, a technical violation of the automatic stay without a showing of willful conduct does not expose the United States to sanctions.[11]

### 2. *Willful Violations of § 362*

■ Subsection 362(h) was added to § 362 by the 1984 amendments to the Bankruptcy Code. Courts disagree about which standard to use when deciding whether a party's technical violation of the automatic stay is willful. The United States urges us to adopt as the appropriate standard for willfulness the standard set forth in *In re Forty–Eight Insulations, Inc.*, 54 B.R. 905 (Bankr.N.D.Ill.1985). In that case, the bankruptcy court read § 362(h) as "requiring conduct which flaunts the jurisdiction and integrity of the court" and as "a deliberate and intentional act done with the knowledge that the act is in violation of the stay." *Forty–Eight Insulations*, 54 B.R. at 908.[12] Various circuit

---

**10.** The United States has not argued that Jerri Taborski had no tax liability for 1987 and 1988 and thus was not entitled to a refund for her share of 1987 overpayments or for her share of 1988 overpayments which were made before she filed her petition on February 17, 1988. We therefore assume that Jerri Taborski made overpayments in each of those tax years and is entitled to a refund equal to her share of the withheld tax payments. *Gordon*, 757 F.2d at 1160. We need not decide whether the IRS somehow violated the automatic stay by seizing Jerri Taborski's refunds for overpayments which she made in 1988 after she filed her bankruptcy petition.

**11.** 11 U.S.C. § 362(h). Subsection 362(h) provides as follows:

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h). The IRS does not contest that Jerri Taborski was injured to the extent that she incurred costs and attorneys' fees in bringing her adversary action and the two motions.

**12.** As additional authority, the United States cites to *In re Zunich*, 88 B.R. 721 (Bankr. W.D.Pa.1988); *In re Davis*, 74 B.R. 406, 410 (Bankr.N.D.Ohio 1987); *In re Crispell*, 73 B.R. 375, 379 (Bankr.E.D.Mo.1987); *In re Tel–A–Communications Consultants, Inc.*, 50 B.R. 250, 254 (Bankr.D.Conn.1985). *See also In re Red Ash Coal & Coke Corp.*, 83 B.R. 399 (W.D.Va.

courts have adopted a broader standard.[13]

The Ninth Circuit in *In re Bloom*, 875 F.2d 224, 277 (9th Cir.1989), defines willful violations of the automatic stay as follows:

A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*In re Bloom*, 875 F.2d at 227 (quoting *INSLAW, Inc. v. United States (In re INSLAW, Inc.)*, 83 B.R. 89, 165 (Bankr.D.D.C. 1988)).[14] *See also, In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2nd Cir.1990) (any deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages); *In re Atlantic Business and Community Corp.*, 901 F.2d 325, 329 (3d Cir.1990) (adopting the *Bloom* standard); *Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289, 290 (4th Cir. 1986) (sanctions appropriate when a party intentionally attempted to repossess vehicle in spite of pending bankruptcy petition). We decline to follow the more stringent *Forty–Eight Insulations* standard and instead will follow the *Bloom* standard for the following reasons.

■ First, the Seventh Circuit instructs district courts "to give respectful consideration to the decisions of the other courts of appeals and follow them whenever we can." *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir.1987); *Richards v. Local 134, International Brotherhood of Electrical Workers*, 790 F.2d 633, 636 (7th Cir.1986). We interpret that instruction as suggesting that district courts should adopt decisions of other circuit courts over contrary decisions of other district courts. Since the United States has not cited any circuit court authority in support of the more stringent standard, we will follow the standard adopted by the Second, Third, Fourth, and Ninth Circuits.

Second, the more seasoned authority favors a broader standard. The cases cited by the United States are primarily cases of first impression, decided soon after § 362(h) was enacted.[15] Those courts did not have higher authority to serve as a guide to determine a willfulness standard to use when imposing an award under § 362(h). *E.g., Forty–Eight Insulations*, 54 B.R. at 908. *Cf. In re Crysen/Montenay Energy Co.*, 902 F.2d at 1105 (the standard governing the imposition of sanctions pursuant to 11 U.S.C. § 362(h) is one of first impression for this court). The circuit cases, on the other hand, had the benefit of lower court decisions as well as insights from other circuits which had discussed the issue. *E.g., In re Atlantic Business and Community Corp.*, 901 F.2d at 329. As this body of law developed, the circuits seem to be uniformly adopting the broader standard. We do the same here.

■ Applying the *Bloom* standard to the present facts, we find the IRS willfully violated the automatic stay. It had notice of the bankruptcy; it filed a proof of claim

1988); *In re Cox*, 53 B.R. 829, 831 (Bankr. M.D.Fla.1985).

**13.** The Seventh Circuit has not decided this issue. In at least one Seventh Circuit decision, the court implies that it would adopt the broader standard. *In re Roete*, 936 F.2d 963, 965 (7th Cir.1991) (a holder presenting a prepetition check to a bank after notice that the maker had filed a petition in bankruptcy *could* be considered a willful violation of the automatic stay). However, a subsequent case implies that this remains an open issue in this circuit. *Price v. Rochford*, 947 F.2d 829, 831 (7th Cir.1991) (the court did not need to decide the question left open by Congress, whether willfulness re-

quires mere knowledge of the automatic stay or knowledge that one's actions will violate the stay, because the narrow question before the court was whether § 362(h) created a cause of action that survives the termination of the underlying bankruptcy).

**14.** The *Bloom* court adopted the definition verbatim from the *INSLAW* case.

**15.** In 1984 Congress overhauled the Bankruptcy Code and its related jurisdictional statutes. As part of the package, Congress also amended § 362 to add subsection (h). *Price v. Rochford*, 947 F.2d at 831.

shortly after the Chapter 13 petition was filed. And the IRS wrongfully withheld Jerri's share of the 1987 and 1988 refund even after she filed the adversary proceeding. Even if the IRS did not initially realize that Jerri claimed an individual share of the 1987 and 1988 refunds and thus did not know it had seized estate property, it cannot disclaim knowledge of Jerri's intention to claim an individual share after Jerri filed the adversary proceeding in June, 1989. Moreover, instead of expeditiously investigating Jerri's claim, the IRS dragged its heels for over sixteen months before providing Jerri her rightful share of the 1987 and 1988 refunds. The IRS's continued withholding of Jerri's refund for sixteen months after she filed the adversary proceeding is a willful violation of the automatic stay.

### 3. *26 U.S.C. § 7430*

■ Finally, the United States claims that 26 U.S.C. § 7430(a) controls any award of costs and attorneys' fees because this matter involves the determination, collection or refund of a tax.[16] Section 7430 requires certain findings including that the position of the United States was not substantially justified.[17] Since the bankruptcy court did not make any findings pursuant to § 7430, the United States argues that the costs and attorneys' fee award was improper. We reject this analysis for three reasons.

First, none of the cases the IRS cited in support of its position involved a violation of the automatic stay under § 362. *In re Brickell Invest. Corp.*, 922 F.2d 696 (11th Cir.1991); *In re Robidoux*, 116 B.R. 320 (D.Mass.1990); *In re Graham*, 106 B.R. 692 (Bankr.D.Colo.1989). *In re Olson*, 100 B.R. 458 (Bankr.N.D.Iowa 1989), *affirmed*,

121 B.R. 346 (N.D.Iowa 1990), *affirmed*, 930 F.2d 6 (8th Cir.1991); *In re Kiker*, 98 B.R. 103 (Bankr.N.D.Ga.1988). Second, the United States assumes that 26 U.S.C. § 7430 somehow preempts a bankruptcy court from awarding costs and attorneys' fees against it under the Bankruptcy Code or Bankruptcy Rules in any situation involving tax collection or refunds. The IRS does not cite any case in support of that proposition, and at least one of the cases cited by the IRS supports the opposite conclusion. *In re Kiker*, 98 B.R. 103 (Bankr. N.D.Ga.1988).

In *Kiker*, the debtors filed a joint Chapter 13 petition. The IRS filed a proof of claim for a withholding tax penalty owed by one of the debtors. Because the proof of claim was untimely, the bankruptcy court disallowed the claim. The debtors completed their Chapter 13 plan and were discharged from all debts.

Subsequently, the IRS made a number of attempts to collect the penalty. After the debtors' attorney was unsuccessful in persuading the IRS that its claim was not well founded, the debtors filed a motion to reopen the Chapter 13 bankruptcy to show cause why the United States should not be held in contempt and for sanctions. *Kiker*, 98 B.R. at 105.

In response to that motion, the United States argued that the standards under 26 U.S.C. § 7430 applied to the motion to show cause. The bankruptcy court did apply § 7430 to the United States' "in-court" litigation position and found that position was substantially justified, because the United States conceded that the penalty it sought was discharged in the Chapter 13 case and therefore agreed to a consent order. However, the *Kiker* court also found that the

---

**16.** Section 7430(a) states as follows:

In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for:

(1) reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and

(2) reasonable litigation costs incurred in connection with such court proceeding.
26 U.S.C. § 7430(a).

**17.** To be a prevailing party under § 7430(a), a party must satisfy three requirements. First, the party must establish that the position of the United States was not substantially justified. Second, a party must substantially prevail with respect to the amount in controversy or to the most significant issues. Finally, the party must meet certain requirements of 28 U.S.C. § 2412(d)(1)(B). *See* 26 U.S.C. § 7430(c)(4)(A).

United States' actions prior to the litigation were improper, and it therefore held the United States in contempt and awarded the debtors their costs and attorneys' fees under 11 U.S.C. § 105 and Bankruptcy Rule 9020. While the precise issue of whether § 7430 prevents a court from awarding costs and attorneys' fees against the United States for a violation of the § 362 automatic stay was not raised in *Kiker*, we read *Kiker* as allowing district courts to award costs and attorneys' fees against the United States under the Bankruptcy Code or Bankruptcy Rules even in situations involving tax collection and refunds.

We conclude that 11 U.S.C. § 7430 does not prevent a bankruptcy court from awarding costs and attorneys' fees pursuant to 11 U.S.C. § 362(h) for a violation of the automatic stay.

### CONCLUSION

For the reasons set forth above, we affirm the bankruptcy court's decision awarding Jerri Taborski her costs and attorneys' fees. We remand this matter to the bankruptcy court to review Jerri Taborski's fee petition in regard to her adversary proceeding and first motion to show cause and also to conduct a hearing regarding Jerri Taborski's second motion to show cause in regard to the 1989 refund.