**In re Theodore R. PRICE and Ollie P. Price, Debtors.**

**Bankruptcy No. 89 B 00796.**

United States Bankruptcy Court, N.D. Illinois, E.D.

July 15, 1992.

Kevin D. Sprow, McKenzie & McKenzie, Chicago, Ill., for Theodore R. Price and Ollie P. Price, debtors.

Benjamin R. Norris, U.S. Dept. of Justice, Washington, D.C., for the U.S.

Mayer Y. Silber, I.R.S., Office of the Dist. Counsel, Chicago, Ill., for the I.R.S.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the amended fee application of McKenzie & McKenzie, P.C., (the "Applicant") for the allowance of $28,305.00 in compensation and reimbursement of expenses in the amount of $514.13. An objection to the application was filed on March 17, 1992, by the United States of America ("USA"). For the reasons set forth herein, the Court hereby awards the Applicant $10,963.75 in compensation and authorizes reimbursement of expenses in the sum of $514.13.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this application pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. FACTS AND BACKGROUND

Many of the relevant facts and background are contained in an earlier Opinion. *See In re Price*, 103 B.R. 989 (Bankr. N.D.Ill.1989). The Debtors filed a Chapter 13 petition on January 17, 1989. Thereafter, on April 17, 1989, the Internal Revenue Service served the Debtors with a notice of intention to levy in violation of 11 U.S.C. § 362. The Court held that the Internal Revenue Service thereby willfully violated the automatic stay under section 362(a)(1) and (a)(6). Further, the Court found that the Internal Revenue Service was liable for the Debtors' attorneys' fees and costs actually incurred pursuant to section 362(h). *Id.* A previous fee application was submitted to the Court, but prior to ruling on same, an appeal was taken. Hence, the Court never passed on that application. The Court's prior Opinion was subsequently affirmed on appeal. *See In re Price*, 130 B.R. 259 (N.D.Ill.1991).

This matter focuses on assessment and determination of the appropriate costs and fees to be awarded under section 362(h). Pursuant to the instant application, from April 19, 1989 to May 20, 1991, the Applicant expended 132.75 hours of time at various hourly rates for attorneys and paraprofessionals totaling $14,152.50. The Applicant requests this Court to enhance the regularly computed "lodestar" time by a factor of two, thereby resulting in a fee request of $28,305.00.

## III. APPLICABLE STANDARDS

Section 362(h) of the Bankruptcy Code provides as follows:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h). This section and its sparse legislative history are silent on the standards and methodology to be used in determining assessments of fees and costs thereunder. *See* 1984 U.S.Code Cong. & Admin.News 576–606. Other Code sections and Rules with instructive legislative and judicial gloss, however, provide helpful guidelines which the Court will follow by analogy.

Pursuant to Sections 330 and 331 of the Bankruptcy Code, all professionals applying for fees must demonstrate that their services were actual, necessary and reasonable. The legislative history of section 330 expressly notes the Court's correlative duty to closely examine the reasonableness and necessity of the fees incurred. Bankruptcy Rule 2016(a) in turn requires that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed.R.Bankr.P. 2016(a).

The burden of proof to show entitlement to the fees requested is on the Applicant. *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr.N.D.Ill.1987); *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr.N.D.Ill. 1985). Moreover, fee applications must stand or fall on their own merits. *See In re Wildman*, 72 B.R. 700 (Bankr.N.D.Ill. 1987). Even if no objections are raised to a fee application, the Court is not bound to award the fees sought, and in fact has a duty to independently examine the reasonableness of the fees. *In re Chicago, Lutheran Hospital Asso.*, 89 B.R. 719, 734–735 (Bankr.N.D.Ill.1988); *In re Wyslak*, 94 B.R. 540, 541 (Bankr.N.D.Ill.1988); *Pettibone*, 74 B.R. at 299–300; *In re NRG Resources, Inc.*, 64 B.R. 643, 650 (W.D.La. 1986).

Several courts have listed other factors to be considered when reviewing fee applications. These other factors are set forth in *Johnson v. Georgia Highway Express,*

*Inc.*, 488 F.2d 714 (5th Cir.1974). The twelve *Johnson* factors have been considered by the Court, applied to the pending application, and are as follows: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Id.* at 717–719.

## IV. DISCUSSION

### A. OBJECTIONS OF USA

First, as a threshold matter, USA argues that it has not waived its sovereign immunity in order for the Court to award an affirmative recovery against it. The Court summarily rejects this argument as same has previously been decided by this Court and subsequently affirmed by the district court. Consequently, under the undisputed facts discussed in both Opinions and pursuant to 11 U.S.C. § 106(a), USA has waived its sovereign immunity. The fact that USA continues to reargue the issue illustrates why the Applicant had to expend the amount of time it did on this matter which involved an admitted technical violation of the automatic stay. Because USA chose to pursue and argue the sovereign immunity issue at each stage of litigation, the Applicant was forced to expend substantial time researching and writing several trial and appellate briefs on behalf of the Debtors.

■ The next objection USA makes is that there is no fee agreement between the Debtors and the Applicant that would obligate the Debtors' estate to pay the compensation requested, and thus there should be no award of attorneys' fees. The Court finds no merit in this contention. The Bankruptcy Code does not require counsel for a debtor to enter into a fee agreement.

Section 362(h) of the Code governs in this matter and expressly provides the statutory basis for the award of fees to counsel for individuals injured by violations of the automatic stay. *See also In re Prairie Trunk Railway*, 125 B.R. 217 (Bankr. N.D.Ill.1991), *aff'd*, No. 91 C 2204 slip op. (N.D.Ill.1992). Thus, the Court rejects this argument.

■ USA further argues that at most, the Debtors' estate is entitled to recover $75.00 per hour for the necessary, nonduplicative services rendered by the Applicant. USA maintains that 26 U.S.C. § 7430 and 28 U.S.C. § 2412 set forth the standard fee rate in federal tax litigation. The Court rejects this contention and follows the well reasoned opinion of Judge Marovich in *Taborski v. IRS*, 141 B.R. 959 (N.D.Ill.1992). There the district court, in affirming another judge of this court, held that 26 U.S.C. § 7430 does not prevent a bankruptcy court from awarding costs and attorneys' fees pursuant to section 362(h) for a violation of the stay. *Id.* 141 B.R. at 967. Moreover, 26 U.S.C. § 7430 and 28 U.S.C. § 2412 do not control the award of fees in bankruptcy cases; the relevant Bankruptcy Code provisions control. This matter is not federal tax litigation grounded on those statutes. Rather, it is a contested motion on fees incidental to a Chapter 13 bankruptcy reorganization involving a violation of the automatic stay of the Bankruptcy Code.

■ As for USA's argument concerning the hourly rates charged by the Applicant, the Court finds the rates to be reasonable at the times sought and within the range of rates charged by such professionals in this geographic area. *See In re Continental Illinois Securities Litigation*, 962 F.2d 566 (7th Cir.1992). Additionally, USA argues that the billing rate of Robert McKenzie, a member of the Applicant's firm, has risen faster than the inflation rate. The rate of inflation, however, is not outcome determinative or really relevant. McKenzie bills his time at $160.00 per hour and spent less than thirteen hours on the matter. The bulk of the services performed were by

Kevin Sprow (78.50 hours) at $150.00 per hour and other firm members at rates below $100.00 per hour. The Court will not reduce any of the hourly rates charged. There is no contrary showing by USA that the rates charged by members of the Applicant firm are at other than their usual and customary rate for such legal work in or out of bankruptcy proceedings. Although *Continental* is distinguishable as involving class action litigation rather than bankruptcy litigation, the market rate approach therein is comparable to and compatible with the policy change under the Bankruptcy Code towards compensation awarded at market rates instead of the policy of "economy of the estate" under the former Bankruptcy Act. *See* 124 Cong.Rec. H11, 0912 (Sept. 28, 1978); S17, 408 (Oct. 6, 1978).

■ Furthermore, USA contends that if the Court were to allow the Applicant double the lodestar, USA objects to the extent that the fees awarded are not actually paid over to the Applicant, but instead would be used to fund the Debtors' plan of reorganization. USA maintains that section 362(h) is intended to compensate the Debtors for any damages suffered from the violation of the automatic stay, and was not intended to compensate the Debtors' attorneys. This argument is also rejected because it is the Debtors who are funding the confirmed reorganization plan, and who are making payments from their post-confirmation income, and not from any award of fees made hereunder to be paid by USA to Applicant. The fees and costs awarded herein are the appropriate measure of damages for the stay violation and are not a fund for future plan payments for which the Debtors are obligated under the confirmation order.

■ Finally, USA contends that retention of the funds by the estate would be tantamount to champerty. USA maintains that if the compensation awarded is not paid over to the Applicant, but retained to fund the Debtors' plan, an appearance of champerty is created because it will appear that the proceeds awarded are being split by the Debtors and the Applicant. The Applicant has denied that it is engaging in

champerty. Champerty is defined as "[a] bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds." Black's Law Dictionary (6th ed.). *See generally* 7 Illinois Law & Practice, Champerty and Maintenance, §§ 3 and 4 (1955 and 1991 Supp.). The Court finds this argument disingenuous. The record is completely devoid of any evidence of the existence of an agreement between the Debtors and the Applicant whereby one party agreed to finance this litigation in return for a promise to split the proceeds of such litigation with the other party. In fact, the Applicant has denied that it is engaged in champerty. USA's bare allegation without any evidentiary support is unworthy of any further discussion and dismissed as without merit.

## B.  FEES REQUESTED

■ Turning to the merits of the compensation requested, the Court has carefully examined the fee application and notes several areas of concern and further meritorious objections. USA objects on the basis that the Applicant seeks unreasonable, duplicative compensation for the services rendered. USA sets forth many entries contained in the application as demonstrative of this objection. Moreover, USA points to the minimum billing increments or units of time employed by the Applicant. The Court hereby sustains a portion of USA's objections to several of the entries in the application.

USA correctly points out that all of the time entries contained in the fee application for services rendered are charged in minimum one-quarter hour increments. At the hourly rates charged, this type of billing practice inherently inflates and distorts the time actually expended, and hence is unacceptable. *See Pettibone*, 74 B.R. at 302; *Wildman*, 72 B.R. at 708–709; *In re Stoecker*, 114 B.R. 965, 976 (Bankr.N.D.Ill. 1990). Consequently, the Court will discount the compensation requested to take into account the likely overcharge from such inflationary distortion resulting from

minimum billing units. The Court will discount the fee application approximately five percent, namely $700.00.

▉ Additionally, USA objects to many of the time entries pertaining to telephone conversations. Pursuant to the standards set forth in this district, a time entry of "telephone call" or "telephone call with IRS" is insufficient. *See Wildman*, 72 B.R. at 708. The purpose and length of the conversation and the person called or calling must be clearly set forth in the application. *Id.* The entries pertaining to telephone calls in the instant application are insufficient in that they fail to provide the Court with the requisite information in order to determine if the services were reasonable and necessary. The following entries are hereby disallowed as insufficiently detailed:

| DATE | ATTORNEY | TIME EXPENDED | HOURLY RATE | DISALLOWANCE |
|---|---|---|---|---|
| 04/19/89 | KAM | .25 hours | $ 90.00 | $ 22.50 |
| 04/19/89 | KAM | .25 hours | 90.00 | 22.50 |
| 04/19/89 | KAM | .25 hours | 90.00 | 22.50 |
| 04/20/89 | KAM | .25 hours | 90.00 | 22.50 |
| 04/28/89 | KAM | .25 hours | 90.00 | 22.50 |
| 04/28/89 | KAM | .50 hours | 90.00 | 45.00 |
| 05/01/89 | KAM | .25 hours | 90.00 | 22.50 |
| 05/01/89 | KAM | .25 hours | 90.00 | 22.50 |
| 05/01/89 | KAM | .25 hours | 90.00 | 22.50 |
| 05/02/89 | KAM | .25 hours | 90.00 | 22.50 |
| 05/03/89 | KAM | .25 hours | 90.00 | 22.50 |
| 06/03/89 | KAM | .25 hours | 90.00 | 22.50 |
| 06/12/89 | REM | .25 hours | 160.00 | 40.00 |
| 07/12/89 | REM | .25 hours | 160.00 | 40.00 |
| 07/13/89 | MLS | .25 hours | 75.00 | 18.75 |
| 07/17/89 | REM | .25 hours | 160.00 | 40.00 |
| 08/24/89 | REM | .25 hours | 160.00 | 40.00 |
| 08/24/89 | REM | .25 hours | 160.00 | 40.00 |
| 08/25/89 | REM | .25 hours | 160.00 | 40.00 |
| 08/30/89 | REM | .25 hours | 160.00 | 40.00 |
| 10/02/89 | REM | .25 hours | 160.00 | 40.00 |
| 11/18/89 | REM | .25 hours | 160.00 | 40.00 |
| 11/21/89 | REM | .25 hours | 160.00 | 40.00 |
| 12/01/89 | REM | .25 hours | 160.00 | 40.00 |
| 12/04/89 | KDS | .25 hours | 115.00 | 28.75 |
| 12/05/89 | KDS | .25 hours | 115.00 | 28.75 |
| 12/06/89 | REM | .25 hours | 160.00 | 40.00 |
| 12/06/89 | KDS | .50 hours | 115.00 | 57.50 |
| 01/31/90 | KDS | .25 hours | 115.00 | 28.75 |
| 01/31/90 | KDS | .25 hours | 115.00 | 28.75 |
| 02/13/90 | KDS | .25 hours | 115.00 | 28.75 |
| 03/01/90 | REM | .25 hours | 160.00 | 40.00 |
| 08/28/90 | KDS | .25 hours | 115.00 | 28.75 |
| 09/10/90 | KDS | .25 hours | 115.00 | 28.75 |
| 10/18/90 | REM | .25 hours | 160.00 | 40.00 |
| 04/01/91 | KDS | .25 hours | 115.00 | 28.75 |
| 05/08/91 | KDS | .25 hours | 115.00 | 28.75 |
| **TOTAL DISALLOWED** | | | | $1,187.50 |

▉ Moreover, there are several other entries which inadequately describe the tasks performed. For instance, many of the entries reflect time expended reviewing the file, conferencing, and writing letters to the client without the requisite detailed specificity. A proper billing entry must adequately explain what services the pro-

fessional was rendering at the time. *Wildman*, 72 B.R. at 708. With respect to conferences, the entry should note the nature and purpose of the conference as well as the parties involved. *Id.* Many of the entries contained in the application at bar fail to adequately explain the nature and substance of the work performed. Some include intra-office conferencing among firm members without any showing of the compelling necessity therefore. Normally, attorneys are expected to work independently. *Id.* at 710. As a result, the Court is unable to ascertain the necessity or reasonableness of these services. Consequently, the following entries are hereby disallowed:

| DATE | ATTORNEY | TIME EXPENDED | HOURLY RATE | DISALLOWANCE |
|---|---|---|---|---|
| 05/26/89 | KAM | .25 hours | $ 90.00 | $ 22.50 |
| 06/06/89 | KAM | .25 hours | 90.00 | 22.50 |
| 06/14/89 | REM | .25 hours | 160.00 | 40.00 |
| 06/16/89 | MLS | .50 hours | 75.00 | 37.50 |
| 06/19/89 | MLS | .75 hours | 75.00 | 56.25 |
| 06/20/89 | MLS | .50 hours | 75.00 | 37.50 |
| 06/23/89 | MLS | .25 hours | 75.00 | 18.75 |
| 07/12/89 | MLS | .25 hours | 75.00 | 18.75 |
| 08/18/89 | MLS | .25 hours | 75.00 | 18.75 |
| 08/18/89 | REM | .25 hours | 160.00 | 40.00 |
| 08/25/89 | MLS | .25 hours | 75.00 | 18.75 |
| 11/08/89 | KDS | 2.25 hours | 115.00 | 258.75 |
| 11/08/89 | KDS | .75 hours | 115.00 | 86.25 |
| 11/13/89 | KDS | .75 hours | 115.00 | 86.25 |
| 11/18/89 | KDS | .25 hours | 115.00 | 28.75 |
| 11/22/89 | CGW | .25 hours | 85.00 | 21.25 |
| 01/31/90 | KDS | .25 hours | 115.00 | 28.75 |
| 02/20/90 | KDS | .25 hours | 115.00 | 28.75 |
| 03/01/90 | KDS | .50 hours | 115.00 | 57.50 |
| 03/01/90 | KDS | .25 hours | 115.00 | 28.75 |
| 05/03/90 | KDS | .50 hours | 115.00 | 57.50 |
| 08/27/90 | KDS | .25 hours | 115.00 | 28.75 |
| 08/31/90 | KDS | .25 hours | 115.00 | 28.75 |
| 09/04/90 | KDS | .25 hours | 115.00 | 28.75 |
| 04/03/91 | KDS | .25 hours | 115.00 | 28.75 |
| 05/20/91 | KDS | 1.50 hours | 115.00 | 172.50 |
| **TOTAL DISALLOWED** | | | | $1,301.25 |

USA has further objected on the ground that excessive and duplicative amounts of time were expended given the fact that the Applicant handled several other cases with almost identical issues, and the Applicant has also applied for compensation in those cases. The two cases referenced are *Abernathy v. United States*, 88 A 681 and *Kolb v. United States*, 89 A 0501, pending before other judges of this bankruptcy court. The Applicant responds to this argument by stating that this case is the first of the trio where a fee application is actually under advisement. The Applicant states that if there is some overlapping, inefficiency, or duplicative work performed, this Court is not the forum for such an objection. Rather, the fees here should be awarded without consideration of the other two cases, and USA could raise such argument in those cases when the fees in *Abernathy* and *Kolb* are being considered. Moreover, the Applicant further contends that insofar as some work performed may have overlapped, a savings to the three estates resulted, and is consequently reflected by the reduced time billed in each case. In addition, the Applicant

states that there are differences between the case at bar and *Kolb* and *Abernathy*. In the instant case, USA violated the automatic stay of section 362. *Kolb* and *Abernathy*, on the other hand, involved violations of discharge orders and the injunctive relief afforded by section 524.

The Court has reviewed the exhibits submitted by USA constituting the fee applications in the *Kolb* and *Abernathy* cases. The Court has carefully examined each application and has failed to find a pattern of duplicative time entries in the several applications. Thus, the Court disagrees with USA's argument that the Applicant expended excessive amounts of time in this matter or is duplicating efforts or double or triple billing in all three matters by charging all three cases for the same work performed once.

The time and efforts in this matter are so substantial because the Applicant was required to expend time in this Court pursuing a motion for violation of the automatic stay by USA and subsequently defending an appeal in the district court. Notwithstanding that, USA admitted the violation of the stay, and proceeded to litigate the sovereign immunity defense through a lengthy and hard fought appeal thereby causing the Applicant to expend much more work. USA lost the battle and now protests when the Applicant seeks fees in connection with such protracted litigation solely caused by USA. The Court will not penalize the Applicant for its actual services rendered that are adequately supported in accordance with the above cited precedents. Thus, the Court hereby allows the fees requested in the sum of $10,963.75.[1] This award is within the ceiling established by section 106(b) and is less than the amount of USA's filed claim for unpaid taxes in the amount of $12,737.57 as referenced by the district court in its Opinion. *See* 130 B.R. at 271–272.

## C. FEE ENHANCEMENT REQUESTED

██ The Applicant seeks double the lodestar. In support of this request, the Applicant notes that the unusual novelty and difficulty of the sovereign immunity issues presented in this case warrant such a fee enhancement. Moreover, the Applicant states that it should be appropriately compensated for accepting the challenge to make new law in this area. Furthermore, the Applicant argues that it should receive an enhancement for shouldering the great risk of nonpayment of its fees and expenses. USA objects to this request.

Attorney fee enhancements have been awarded by other judges of this bankruptcy court. *See In re Churchfield Management & Invest. Corp.*, 98 B.R. 838 (Bankr. N.D.Ill.1989) (trustee's attorneys were entitled to fee enhancement of 2.0 or double the lodestar for time spent in negotiating settlement of class action brought by special counsel); *In re Energy Cooperative, Inc.*, 95 B.R. 961 (Bankr.N.D.Ill.1988) (enhancement for delay in payment is appropriate and should take the form of an award of interest). Fee enhancements are only justified in cases of exceptional success. *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). According to the Supreme Court in *Blum*, the burden of proving that such enhancement is proper is on the Applicant. In that case, the Supreme Court reversed the award of a fifty percent bonus made by the district court, finding that neither complexity nor novelty of the issues was an appropriate basis on which to enhance. Pursuant to *Blum*, those factors are adequately reflected in the lodestar rates. In addition, such matters as quality of work and benefits to a number of persons were not weighty considerations. Where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably expects in light of the hourly rates charged, and that the results were exceptional, fee enhancement could be properly allowed. *Id.* at 899, 104 S.Ct. at 1549. Such evidence and findings that may merit enhancement include

---

1. This figure was arrived at by the following calculation: $14,152.50 − $700.00 − $1,187.50 − $1,310.25 = $10,963.75.

the facts showing in the absence of likelihood of enhancement for risks the plaintiff would have faced, substantial difficulties existed in finding counsel in the relevant professional market. In light of *Blum*, a showing of good results obtained is not solely the basis for fee enhancement.

Attorney fee enhancement was subsequently addressed in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (I)*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) ("Delaware Valley I") and *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (II)*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) ("Delaware Valley II"). *Delaware Valley I* left undecided the issue of whether enhancement was proper based on the attorney's risk of loss. The *Delaware Valley II*, court noted that adjustment to the lodestar for delay in payment is consistent with typical shifting statutes, and also noted that if a fee is not contingent, it is improper to adjust the lodestar just because the case is a risky one as the professional has not assumed the risk of nonpayment. *Delaware Valley II* followed the *Blum* approach in order to guide trial courts in determining when enhancement is proper. *Delaware Valley II* significantly noted that if a risk enhancement is proper, the enhancement, as a general rule, should not be greater than one-third of the lodestar figure.

Prior to the *Delaware Valley* cases, the Seventh Circuit determined that risk of loss did not justify fee enhancement. *See McKinnon v. Berwyn*, 750 F.2d 1383 (7th Cir.1984). Following *Delaware Valley I*, the Seventh Circuit reiterated that it did not accept risk of loss as a basis to adjust the lodestar figure upward. *See Hagge v. Bauer*, 827 F.2d 101 (7th Cir.1987). Upward adjustment for risk of nonpayment was found improper in the absence of specific evidence of harm to the attorney's practice. *See Shakman v. Democratic Organization of Cook County*, 677 F.Supp. 933 (N.D.Ill.1987). *Shakman* was one of those extraordinary cases that merited an upward adjustment for the successful results obtained in a civil rights matter.

Other bankruptcy cases in other districts, on occasion of exceptional performance and results obtained, have made lodestar adjustments to attorneys. *In re Summit Communities of Florida, Inc.*, 84 B.R. 863 (Bankr.S.D.Fla.1988) (bonus of $75,000.00 for exceptional performance of counsel, benefit conferred on creditors and successful results); *In re Baldwin–United Corp.*, 79 B.R. 321 (Bankr.S.D.Ohio 1987) ($1.3 million enhancement based on great risk of nonpayment, rare and exceptional circumstances of the case, and outstanding results achieved by counsel); *In re First Software, Corp.*, 79 B.R. 108 (Bankr. D.Mass.1987) ($10,000.00 premium for outstanding results obtained).

The Ninth Circuit Court of Appeals in *In re Manoa Finance Co.*, 853 F.2d 687 (9th Cir.1988) compared the standard for awarding attorneys' fees in bankruptcy cases to awards under fee shifting statutes. *Manoa* noted the contrast between fee shifting statutes, which are not usually intended to provide fees commensurate with other areas of practice, and section 330 of the Bankruptcy Code and its clear legislative history expressed by Congress. In spite of the differences, the Ninth Circuit concluded there are sufficient similarities to justify applying the same general principles to analyze requests for fee enhancement in bankruptcy cases. In *Manoa* the court noted that the following factors are generally subsumed in the lodestar method which can support an upward adjustment only where shown by specific evidence that they were not fully reflected in the lodestar analysis: (1) novelty and complexity of the issues; (2) the special skills and experience of counsel; (3) the quality of representation; and (4) the results obtained. *Manoa* found that notwithstanding such limitations, there may be cases where enhancement is necessary to make the amount of compensation reasonable and commensurate with the rate for comparable nonbankruptcy services as required by section 330. *Manoa* concluded that to justify a bonus, an applicant must show specific evidence why results obtained were not reflected in either the standard hourly rate charged or the number of hours allowed. Moreover,

*Manoa* requires a showing that the bonuses are necessary to make an award commensurate with compensation for comparable bankruptcy services.

Considering *Blum*, the *Delaware Valley* cases, and their subsequent progeny, in light of the briefs submitted by the Applicant, the requisite showing for any multiple of the lodestar figure has not been convincingly made. Based upon the above cited authorities, the Court denies the Applicant's request for a fee enhancement.

First, the violation of the automatic stay was virtually admitted by USA, thus liability under section 362(h) was no problem to establish. Second, at the scheduled trial date, no evidence was offered to prove any actual damages sustained as a result of the stay violation. Instead, the Applicant and counsel for USA had previously stipulated to a continuance to which the Court had not agreed and denied. Thus, no evidentiary or hotly contested testimonial trial proceedings have ever been held to tax and display the Applicant's trial advocacy skills. This hardly merits enhancement for extraordinary skills, unusual quality of representation or marvelous results obtained. Third, the issues, though somewhat complex, were no impenetrable serbonian bog to slog through, and while then currently "hot", were by no means novel as evidenced by the numerous citations noted by the Court involving stay violations by the IRS in many other cases in various districts all over the country holding USA liable therefore. *See* 103 B.R. at 993.

Moreover, on the facts and history of this case, to award any fee enhancement would have the equivalent effect as would an award of double punitive damages potentially available as an appropriate additional remedy. Where no actual damages have been proven, other than the fees and costs reasonably incurred in representing the Debtors on this matter, punitive damages or the equivalent should hardly lie. The stay violation admitted here was not so aggravated or egregious to warrant award of any punitive damages. Similarly, the services rendered by the Applicant, though reasonably and necessarily performed, were not so extraordinary as to mandate an enhancement of fees. This result is especially compelling given the ultimate source of payment of the compensation awarded hereby—the public fisc funded by the taxpayers of the United States, among which are presumably included the Applicant's firm members. The award is within the ceiling provided by section 106(b). As a result, USA effectively ends up with a reduced recovery of the amount it otherwise would have recovered but for its wrongful action. The Applicant has not demonstrated extraordinary circumstances or quality of work so exceptional which would justify the award of double the fees it actually earned.

## D. REIMBURSEMENT OF EXPENSES

The Applicant bears the burden of establishing that it is entitled to certain expenses. *In re Convent Guardian Corp.*, 103 B.R. 937, 939 (Bankr.N.D.Ill. 1989); *In re Affinito & Son, Inc.*, 63 B.R. 495, 497 (Bankr.W.D.Pa.1986). The Court will not assume any expense is necessary. *See In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr.N.D.Ill.1985). An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client. *In re Wildman*, 72 B.R. 700, 731 (Bankr.N.D.Ill.1987).

The total expenses for which reimbursement is sought are $514.13. Reimbursement of expenses is hereby allowed in full as same are sufficiently detailed within the guidelines set forth in *Convent Guardian*. The bulk of the charges consist of photocopying, long distance telephone calls and Lexis research. In its reply to USA's second supplemental memorandum, the Applicant sets forth the requisite specificity required by *Convent Guardian*. The photocopying charges are billed at twenty cents per page and are hereby allowed. In addition, the Court is able to discern from the time entries the necessity for and reasonableness of the Lexis charges. Moreover, the long distance telephone charges were adequately explained by the Applicant. Hence, USA's objections to the reimbursement of expenses are not well taken.

**200**

Consequently, the Court hereby allows the expenses in full in the sum of $514.13.

### V. CONCLUSION

For the foregoing reasons, the Court hereby awards the Applicant compensation in the amount of $10,963.75 and authorizes reimbursement of expenses in the amount of $514.13.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.